IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DONNA L. WINTZ,

        Plaintiff,

v.                              CIVIL ACTION NO.   3:15-11696

CABELL COUNTY COMMISSION,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Cabell County Commission's Motion for Summary Judgment (ECF No. 37) and Plaintiff Donna L. Wintz's Motion for Partial Summary Judgment (ECF No. 39). The Court heard argument on the motions on November 28, 2016. For the following reasons, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

**I.**
**FACTUAL AND PROCEDURAL HISTORY**

On July 31, 2015, Plaintiff filed a Complaint in this Court alleging she was unlawfully terminated from her position as a deputy clerk at the Cabell County Circuit Clerk's Office on April 28, 2015. In her Complaint, Plaintiff alleges her termination interfered with her rights under the Family Medical Leave Act of 1993 (FMLA) (Count One), constituted retaliation for her exercising her rights and engaging in protected activity under FMLA (Count Two), violated the West Virginia Human Rights Act's (WVHRA) prohibition against disability discrimination and age discrimination (Counts Three and Four), resulted in negligent infliction of emotional distress (Count Five), and amounted to a tort of outrage (Count Six). Defendant now moves for summary judgment as to all these claims, and Plaintiff moves for summary judgment

as to some of her claims. Plaintiff also agreed to no longer proceed on her claim for age discrimination.[1] Therefore, without further discussion, the Court **GRANTS** summary judgment in favor of Defendant as to that claim.

It is undisputed that prior to her termination Plaintiff was diagnosed with cancer and had surgery in March 2015. Plaintiff missed approximately one month of work and returned to work without restrictions on April 8, 2015.[2] When she returned, Plaintiff missed a few hours of work on a few days because she purportedly was not feeling well. Approximately three weeks after Plaintiff returned to work, she was terminated. At the time, the Circuit Clerk, Jeff Hood, did not give a specific reason for her termination. Instead, Plaintiff asserts he merely told Plaintiff she was fired because "this is not working out." *Statement of Donna Wintz* (Apr. 30, 2015), ECF No. 39-9, at 2. Similarly, Mr. Hood wrote on an unemployment compensation form that Plaintiff was discharged because she was "[n]ot a fit." *Id*. at 1.

Plaintiff states she worked as a deputy clerk for nearly 13 years. Prior to her termination, Plaintiff's duties included processing mental hygiene and legal guardianship petitions and performing counter duties. It is not contested that the processing of these petitions is a serious matter which needs to be done correctly. During her tenure, Plaintiff asserts she never received a negative performance evaluation, nor was she informed her work was unsatisfactory. Although

---

[1]*Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 2 n.1.

[2]Medical records dated April 6, 2016, show that Plaintiff's urologist did recommend she see her primary care physician regarding her alcohol dependence. *Urology Note by Rocco Morabito, Jr., M.D.* (Apr. 6, 2016), ECF No. 37-7.

Fay Allen, the circuit clerk's office manager, maintained notes about Plaintiff's work and behavior, some of which were unfavorable, those notes apparently were not shared with Plaintiff.

Despite a poster on FMLA displayed in the office, Plaintiff states that at no time during her diagnosis or treatment for cancer was she provided written notice of her rights and/or eligibility under FMLA, and there was nothing about FMLA in the employee handbook. However, Janet McCoy, the deputy clerk in charge of keeping time and tracking leave, averred in an affidavit that she told Plaintiff about her rights under FMLA prior to her surgery and explained to her the office policy was that an employee must exhaust all accumulated sick and annual leave before the employee could use FMLA. *Aff. of Janet McCoy*, at 1 (Sept. 28, 2016), ECF No. 37-13, at 2. According to Ms. McCoy, Plaintiff told her she did not want to use "all of her annual leave because she did not want to give up her previously planned vacation for the year which was an annual time-share." *Id.* at 1-2, ECF No. 37-13, at 2-3. When Plaintiff took off for her surgery she had over twenty-seven days of sick leave available. When she was released to return to work she had over four days remaining. She also had twenty-four accrued paid vacation days at the time she was terminated.

In response to Plaintiff's motion and in support of its own motion, Defendant points to the fact that Plaintiff had a significant drinking problem. In 2012, Plaintiff was given seven days off to attend rehabilitation. Plaintiff states she was sober for a year, but she admits she regularly drank alcohol in 2015, including during the workday. Plaintiff testified at her deposition that she "[m]ainly would buy beer at noon. . . . And then I'd drink in the evenings." *Dep. of Donna Wintz*, at 34-35, ECF No. 37-3, at 12. However, she stated she sometimes drank one or two beers in her

car during her lunch hour, but she denied it impaired her ability to do her work. *Id*. at 37, ECF No. 37-3, at 13.

On the other hand, Defendant asserts that Plaintiff's alcohol use seriously interfered with her job performance. Ms. Allen stated at her deposition that she could smell alcohol on Plaintiff at work, she observed Plaintiff act inappropriately with the public, and she recalled members of the public expressing concern about Plaintiff's actions. *Dep. of Fay Allen*, Ex. 2 at 32 & 35-36, ECF No. 37-2, at 12-13. Ms. Allen said she spoke with Plaintiff about her dealings with the public, but the behavior continued. *Id*. at 35, ECF No. 37-2, at 12. Although Plaintiff appeared to perform her job well her first week back to work following her surgery, Ms. Allen reported that, thereafter, she "had extreme body odor," confusion, slurred speech, difficulty understanding, and erratic behavior. *Id*. at 40-42, ECF No. 37-2, at 14. Ms. Allen further said the office received telephone calls from individuals who were concerned that Plaintiff gave them inaccurate information about mental hygiene petitions and guardianship hearings. *Id*. at 42-43. Based upon these problems, Ms. Allen believed Plaintiff "was not able to do her job." *Id*. at 43.

Others also observed Plaintiff's behavior. Erin Carter, who worked as a deputy clerk, believed Plaintiff was drinking during the workday both before and after her surgery. Ms. Carter said she noticed Plaintiff was wobbly, had slurred speech, and was sluggish. *Dep. of Erin Carter*, 28-29, ECF No. 37-9, at 11. She also stated Plaintiff would give wrong information to the public. *Id*. at 31. Similarly, Debra Wise, who worked as a deputy clerk, noticed work-related issues with Plaintiff. Ms. Wise stated in her deposition that she worked closely with Plaintiff because she was Plaintiff's backup in filing mental hygiene and guardianship petitions. *Dep. of Debra Wise*, at

16-17, ECF No. 37-10, at 8. She said that she could smell alcohol on Plaintiff's breath at work, saw her stumble when she walked, and noticed she needed help with her duties because she could not think clearly. *Id*. at 21, ECF No. 37-10, at 9. She also observed her making mistakes in mental hygiene cases. She said "[s]ometimes she wouldn't even put the person's name in that had the mental hygiene. She was indexing on wrong cases, putting information—confidential information on another person's file and scanning it into the computer." *Id*. at 25, ECF No. 37-10, at 10. When she was drinking and dealing with the public, Ms. Wise said Plaintiff had very slurred speech and was unprofessional. *Id*. at 27. Ms. Wise also said that two Mental Hygiene Commissioners informed her of mistakes in Plaintiff's work. *Id*. at 26. Mr. Hood said that the Mental Hygiene Commissioners also told him they thought Plaintiff acted like she was drinking. *Dep. of Jeff Hood*, at 58, ECF No. 37-11, at 17.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*,

477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.
### DISCUSSION

FMLA authorizes eligible employees "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is unlawful under FMLA for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided" by the Act. 29 U.S.C. § 2615(a)(1). Similarly, although FMLA does not specifically address retaliation by terminating an employee who uses or attempts to use leave under the Act, 29 C.F.R. § 825.220(c) prohibits "retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c), in part. "Courts have recognized that the FMLA provides a cause of action for retaliation." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009) (citing *Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp.2d 668, 671–72 (W.D. Va. 2001)).

In Plaintiff's first two claims she asserts Defendant interfered with her rights under FMLA because it failed to provide her written notice of her eligibility and because Defendant retaliated against her by terminating her shortly after she returned to work. With respect to notice, the Fourth Circuit has stated FMLA provides that employers covered by the Act must "provide an individual, written notice to affected employees that an absence qualifies under the FMLA."

*Vannoy v. The Fed. Reserve Bank of Richmond*, 827 F.3d 296, 301 (4th Cir. 2016) (citing 29 C.F.R. § 825.300). "The purpose of the employer notice requirements 'is to ensure that employers allow their employees to make informed decisions about leave" *Id.* (citation omitted). There are two kinds of notice that must be given to employees eligible for FMLA. One is a "[r]ights and responsibilities notice" found in 29 U.S.C. § 825.300(c) and the other is a "[d]esignation notice" found in 29 U.S.C. § 825.300(d). When notice is not given, it "'interfere[es] with' the exercise of an employee's rights." *Id.* (quoting 29 C.F.R. § 825.220(b)). However, "if a notice violation occur[s], the 'FMLA's comprehensive remedial mechanism' grants no relief absent a showing that the violation prejudiced" the employee. *Id.* (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). In other words, to state a claim for interference, an employer must have violated the notice requirements and the plaintiff must "show prejudice deriving from that violation[.]" *Id.* "Prejudice may be gleaned from evidence that had the [employee] received the required (but omitted) information regarding his FMLA rights, [the employee] would have structured his leave differently." *Id.* at 302 (citations omitted).

Here, Plaintiff has presented evidence that she did not receive written notice as required. Thus, Plaintiff has evidence of a violation of the Act. However, Plaintiff has presented no evidence that she was prejudiced by a lack of notice. Although Plaintiff argues her failure to receive written notice prevented her from making an informed decision about taking leave, there is no evidence she could have structured her FMLA leave any differently if she did receive written notice. In fact, it is clear that Defendant's policy was that Plaintiff was required to exhaust all of her sick and annual leave before she was eligible to take leave under FMLA, and Plaintiff still had over four days of sick leave and twenty-four accrued paid vacation days remaining. Despite the

fact Plaintiff stated in her deposition she would have taken FMLA, she also said she did not know she first had to use all her sick and annual leave. *Dep. of Donna Wintz*, at 42-43, ECF No. 37-3, at 14.[3] The evidence shows that Plaintiff did use some of her sick leave after she returned to work because she was not feeling well, but she did not exhaust it and she was fully released by her doctor without restrictions. Thus, Plaintiff never even reached the point in which she could have even accessed her FMLA. Additionally, Plaintiff denied that drinking impacted her work, and she never indicated to Defendant she needed time off to receive alcohol treatment. Under these circumstances, the Court finds Plaintiff suffered no prejudice due to her failure to receive written notice. Therefore, the Court **GRANTS** summary judgment for Defendant on this claim.

With respect to her claim of retaliation, Plaintiff's evidence must be evaluated under the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vannoy*, 827 F.3d at 304. Under this framework, Plaintiff "'must first make a prima facie showing that [she] engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity.'" *Id*. (quoting *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006)). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to "offer[] a non-

---

[3]Defendant asserts the policy was explained orally to Plaintiff. Plaintiff denies she was ever told about the policy, and she argues Defendant was required to tell her if her paid leave was to be substituted for unpaid FMLA leave. *See* 29 U.S.C. § 825.300(d)(1) (stating in part: "If the employer requires paid leave to be substituted for unpaid FMLA leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave"). However, as indicted by Defendant, its policy does not require paid leave to be substituted for or counted against leave under FMLA. Instead, its policy is more generous in that it allows an employee to take paid sick and annual leave and then use an additional twelve weeks of leave under FMLA. Therefore, the Court finds no merit to Plaintiff's argument.

retaliatory reason of the adverse action[.]" *Id*. If Defendant proffers such evidence, then the burden shifts back to Plaintiff to establish Defendant's proffer "'is pretest for FMLA retaliation.'" *Id.* (quoting *Yashenko*, 446 F.3d at 551).

In analyzing the facts presented in this case under this standard, the evidence demonstrates Plaintiff took sick leave for a serious medical condition and she was terminated shortly after she returned to work. Assuming *arguendo* Plaintiff's evidence is sufficient to state a prima facie case of retaliation, the Court finds Defendant has offered a non-discriminatory reason for her termination and Plaintiff has failed to offer sufficient evidence that Defendant's proffer is pretextual.

Here, the Court finds overwhelming evidence that Plaintiff was terminated because her alcohol use was seriously interfering with her job performance. Plaintiff's co-workers, the mental health commissioners, and the general public all had concerns and/or complained about Plaintiff's behavior. As stated above, these individuals reported that Plaintiff was confused, had slurred speech, was stumbling, had extreme body odor, had erratic behavior, made mistakes in handling petitions, was unprofessional, and smelled and appeared as if she was drinking while at work. Plaintiff admitted in her deposition that she regularly drank in 2015, and she said she sometimes drank during her lunch hour. *Dep. of Donna Wintz*, at 34-37, ECF No. 37-3, at 12-13. She further did not deny that Defendant had a policy that an employee could be terminated immediately if the employee drank during working hours. *Id*. at 39-40, ECF No. 37-3, at 13-14.

Although Plaintiff believes she was doing a good job when she was terminated, Plaintiff's subjective beliefs are insufficient to rebut Defendant's evidence demonstrating otherwise. *See Vannoy*, 827 F.3d at 305 ("'[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for a discharge.'" (Quoting *Dockins v. Benchmark Commc'ns*, 176 F.3d 745, 749 (4th Cir. 1999)). Likewise, the Court finds the temporal proximity of Plaintiff taking sick leave and her termination does not support her claim that the reasons proffered by Defendant are pretextual. Plaintiff has produced no evidence she was fired because she used or attempted to use FMLA leave. In fact, as previously stated, Plaintiff was not even able to use her leave under FMLA because she had not yet exhausted her sick and annual leave. Therefore, considering the evidence in the light most favorable to Plaintiff, the Court finds no basis upon which a reasonable juror could find in her favor on her claim of retaliation. Thus, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's retaliation claim.

Turning next to Plaintiff's claim of disability discrimination under the West Virginia Human Rights Act (WVHRA), West Virginia Code § 5-11-1 *et seq.*, Plaintiff asserts she is an individual with a disability because of her cancer surgery and knee problems. She also argues Defendant should have provided her with reasonable accommodations for alcohol dependence. The WVHRA defines a disability as:

> (1) A mental or physical impairment which substantially limits one or more of such person's major life activities. The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working;
>
> (2) A record of such impairment; or

> (3) Being regarded as having such an impairment.
>
> For the purposes of this article, *this term does not include persons whose current use of or addiction to alcohol . . . prevents such persons from performing the duties of the job in question or whose employment, by reason of such current alcohol . . . use, would constitute a direct threat to property or the safety of others.*

W. Va. Code § 5-11-3 (m), in part (italics added). In this case, Plaintiff's doctor released her to return to work without any restrictions. During her deposition, Plaintiff further said she could perform every basic life function when she was terminated. *Dep. of Donna Wintz*, at 56, ECF No. 37-3, at 18. In addition, there is no evidence Defendant regarded her as an individual with a disability when she returned to work. Therefore, the Court finds no evidence Plaintiff was either actually disabled or perceived as being disabled at the time she was terminated within the meaning of the WVHRA.

Plaintiff further contends, however, that Defendant should have accommodated her alcohol dependence. The WVHRA expressly excludes the use and addiction to alcohol from the definition of disability when it prevents an individual from performing his or her job or constitutes a direct threat to safety. *See* W. Va. Code § 5-11-3(m). If an individual is not disabled, the WVHRA does not require a reasonable accommodation. *See* Syl. Pt. 2, *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 574 (1996) (stating, in part, "[t]o state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W. Va. Code, 5-11-9 (1992), a plaintiff must alleged the following elements: (1) The plaintiff is a qualified person with a disability . . . ."). Here, Defendant has presented more than sufficient evidence to show Plaintiff's alcohol dependence prevented her from doing the duties of her job. In fact, as her position involved the processing of mental health petitions, mistakes in the processing of those petitions raised

serious safety concerns. Therefore, Defendant was not required to accommodate her for alcohol dependence[4] and **GRANTS** summary judgment in favor of Defendant on Plaintiff's claim under the WVHRA as a matter of law. Similarly, having found in favor of Defendant on Plaintiff's claims under FMLA and the WVHRA, the Court finds Plaintiff's claim of retaliatory discharge under West Virginia law necessarily fails because Plaintiff cannot show her termination violated any public policy. Thus, the Court likewise **GRANTS** summary judgment in favor of Defendant on this claim.

Lastly, Plaintiff alleges claims for intentional infliction of emotional distress and the tort of outrage. In light of the evidence fully set forth above, the Court finds Plaintiff's termination was fully justified as a result of her drinking and the serious negative effect it had on her job performance. Defendant neither violated FMLA nor the WVHRA in making its decision to terminate her. Given the Court's decision above, there is simply no basis for Plaintiff's claims of outrage or intentional infliction of emotional distress. Therefore, the Court **GRANTS** summary judgment in favor of Defendant on this claims.

## IV.
## CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS** summary judgment in favor of Defendant, **DENIES** the like motion of Plaintiff, and **DISMISSES** this case from the docket of the Court.

---

[4]In fact, Plaintiff denied her drinking caused her any problems at work.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:      December 15, 2016

        ROBERT C. CHAMBERS, CHIEF JUDGE